IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| DEBRA L. JORDAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:19-cv-349 (LMB/IDD) |
| | ) | |
| DEPARTMENT OF THE ARMY, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Before the Court is respondent Department of the Army's ("respondent" or "Army") Motion to Dismiss petitioner Debra Jordan's ("petitioner" or "Jordan") petition for review of a decision of the Merit Systems Protection Board ("MSPB") on the ground that it was filed outside of the required time period. For the reasons that follow, respondent's motion will be GRANTED.

## I. BACKGROUND

### A. **Factual Background**

Petitioner is an African-American female currently employed by respondent as a GS-0303-14 Strategic Planner in Sembach, Germany. Federal Circuit Record ("Record") [Dkt. 1] at 4. Before serving as a Strategic Planner, Jordan was employed by respondent as a GS-0301-14 Deputy Garrison Manager in the Baumholder Military Community, U.S. Army Garrison, Rheinland Pfalz. Id. at 4–5. Jordan alleges that, while serving as a Deputy Garrison Manager, respondent took three adverse employment actions against her on account of her race, sex, and engagement in protected activity. Id. at 5–6.

Specifically, Jordan alleges that, beginning in September 2016, she was "continuously subjected to harassment and hostility" by Deputy Garrison Manager Bruce Likens, Deputy Garrison Commander Deborah Reynolds, and other "mostly white," mostly male leadership. Id.

at 5. As examples of harassment and hostility, she alleges that she suffered from a "lack of staff, lack of rating authority, lack of access to key meetings," and other "mistreatment" by the leadership. Id. Between July 2017 and February 2018, Jordan reported the alleged harassment and hostility to Garrison Commander Keith Igyarto and Deputy Garrison Commander Kevin Griess. Id. In February 2018, respondent initiated an investigation into her complaints; however, "[n]o explanation was given nor were any results of the [investigation] provided [to her]." Id.

The first of the three alleged adverse employment actions referred to in this litigation occurred on July 9, 2018 when Igyarto issued petitioner a Letter of Reprimand based on the results of the investigation.[1] Id. at 5–6. The second occurred on the same day when Griess permanently reassigned petitioner to the position of Strategic Planner.[2] Id. The third occurred on July 15, 2018 when Griess issued petitioner a substandard performance appraisal.[3] Id. at 6.

B. **Procedural History**

With the assistance of counsel, Jordan appealed these three alleged adverse employment actions to the MSPB, arguing that they constituted "prohibited personnel practices" under the Civil Service Reform Act of 1978, 5 U.S.C. § 7512, and that they were taken against her on account of her race, sex, and engagement in protected activity, in violation of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3. Id. On September 17, 2018, an Administrative

---

[1] The Letter of Reprimand stated that the investigation revealed that petitioner had engaged in six instances of "Unprofessional Conduct towards Army Personnel." Id. at 39. The Letter of Reprimand is not in the record currently before the Court.

[2] The reassignment did not result in a loss of grade or pay; however, Jordan alleges that it was a "de facto demotion" because it did not involve leadership responsibility and would accordingly be "a step back in [her] career." Id. at 41. The reassignment documentation is not in the record currently before the Court.

[3] Jordan has not submitted any documentation of the substandard appraisal to the Court. Id. at 42.

2

Judge ("AJ") held that the MSPB did not have jurisdiction over petitioner's appeal because the three employment actions did not constitute prohibited personnel practices under § 7512, which explicitly lists only removal, suspension longer than 14 days, reduction in grade, reduction in pay, and furlough of 30 days or less. Id. Petitioner did not appeal the AJ's decision to the full MSPB, which resulted in the AJ's decision becoming final on November 1, 2018. Id. The AJ's decision contained a clear recitation of petitioner's appeal rights, including the time limits for filing a petition for review of the decision once it became final.[4] Id.

On January 3, 2019, 63 days after the AJ's decision became final, petitioner, through counsel, filed a petition for review in the United States Court of Appeals for the Federal Circuit. Id. On March 27, 2019, the Federal Circuit held that it did not have jurisdiction over the petition because it concerned a "mixed-case" appeal—one in which an employee complains of a serious

---

[4] The recitation of appeal rights stated, in relevant part:
> You may obtain review of this initial decision only after it becomes final. . . . By statute, the nature of your claim determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). . . . If you wish to seek review of this decision when it becomes final, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum. . . . Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information. . . .
>
> (2) Judicial of EEOC review of cases involving a claim of discrimination. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (not the U.S. Court of Appeals for the Federal Circuit), within 30 calendar days after this decision becomes final under the rules set out in the Notice to Appellant Section. 5 U.S.C. § 7703(b)(2); see Perry v. Merit Sys. Protection Bd., 137 S. Ct. 1975 (2017).

Id. at 44, 48–50.

adverse action and attributes the action, in whole or in part, to bias based on race, gender, age, or disability—which must be brought in a federal district court pursuant to Perry v. Merit Sys. Protection Bd., 137 S. Ct. 1975 (2017). Id. at 61. On the same day, the Federal Circuit transferred the petition to this court. Id. Respondent subsequently moved to dismiss the petition under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Throughout the time relevant to this motion, Jordan was represented by Robert Chris Pittard, a Texas attorney. Petitioner's Memorandum [Dkt. 18] at 1–2. Jordan alleges that she hired Pittard in July 2018, and that for approximately three to four months he "exhibited energy and dispatch in handling several initial matters." Id. at 11. During this time, "[t]hey never had a misunderstanding;" however, sometime after the AJ issued its decision in September 2018, Pittard stopped responding to Jordan's requests for status updates and copies of court filings. Id. at 11–12. Jordan alleges that "some inexplicable communication failure occurred." Id. at 12. As a result of the communication failure, Pittard filed Jordan's petition for review in the wrong court and 33 days after the 30-day filing deadline for filing in the correct court had expired, which caused the Federal Circuit to transfer the case to this court. Id. On February 3, 2019, Jordan fired Pittard. Id.

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(1), "a civil action must be dismissed whenever the court lacks subject matter jurisdiction." Al Shimari v. CACI Premier Tech., Inc., 320 F. Supp. 3d 781, 782 (E.D. Va. 2018). Under Federal Rule of Civil Procedure 12(b)(6), a civil action "must be dismissed when a [petitioner's] allegations fail to state a claim upon which relief can be granted." Adams v. NaphCare, Inc., 244 F. Supp. 3d 546, 548 (E.D. Va. 2017). In

4

evaluating a motion to dismiss under Rule 12(b)(6), a court "accepts facts alleged in the complaint as true and views those facts in the light most favorable to the [petitioner]." Id.

B. **Analysis**

In its motion to dismiss, respondent argues (1) that the Court lacks subject-matter jurisdiction over this action because petitioner did not comply with the filing time limit imposed by 5 U.S.C. § 7703(b)(2), and (2) that even if the Court did have jurisdiction, petitioner has not alleged circumstances warranting equitable tolling of the time limit. Each argument will be addressed in turn. Respondent's second argument prevails.

Respondent's motion raises the important question of whether the 30-day filing time limit imposed by 5 U.S.C. § 7703(b)(2) is a jurisdictional prescription. "Jurisdiction . . . is a word of many meanings." Fort Bend County v. Davis, 139 S. Ct. 1843, 1848 (2019) (quotation omitted). "'Courts, including th[e] [Supreme] Court, have more than occasionally [mis]used the term 'jurisdictional' to refer to nonjurisdictional prescriptions." Id. at 1848 n.4 (quotation omitted) (second alteration in original). Accordingly, "[i]n recent years, the [Supreme] Court has undertaken 'to ward off profligate use of the term.'" Id. at 1848 (quotation omitted).

"[T]he word 'jurisdictional' is generally reserved for prescriptions delineating the classes of cases a court may entertain (subject-matter jurisdiction) and the persons over whom the court may exercise adjudicatory authority (personal jurisdiction)." Id. "Characterizing a rule as a limit on subject-matter jurisdiction 'renders it unique in our adversarial system.'" Id. at 1849 (quotation omitted). For instance, "jurisdictional defects can be raised at any time by the parties or sua sponte by the courts, even post-judgment." Stewart v. Iancu, 912 F.3d 693, 701 (4th Cir. 2019). Similarly, "[w]hen Congress makes a limitations period a jurisdictional prerequisite, then courts may not toll the limitations period on any equitable grounds." Edmonson v. Eagle Nat'l Bank, 922 F.3d 535, 546 (4th Cir. 2019).

5

"The [Supreme] Court has therefore stressed the distinction between jurisdictional prescriptions and nonjurisdictional claims-processing rules, which 'seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times.'" Fort Bend, 139 S. Ct. at 1849 (quotation omitted); see also Stewart, 912 F.3d at 701 (referring to the distinction as "subtle, but important"). "If a time prescription governing the transfer of adjudicatory authority from one Article III court to another appears in a statute, the limitation is jurisdictional; otherwise, the time specification fits within the claim-processing category." Hamer v. Neighborhood Hous. Servs. of Chicago, 138 S. Ct. 13, 20 (2017). "In cases not involving the timebound transfer of adjudicatory authority from one Article III court to another," a "clear-statement rule" applies whereby "[a] rule is jurisdictional if the Legislature clearly states that [the rule] shall count as jurisdictional." Id. at 20 n.9 (quotation omitted).

In cases where this clear-statement rule applies, the Supreme Court has "made plain that most [statutory] time bars are nonjurisdictional." Id. (quotation omitted). Although Congress need not "incant magic words," such as "the word 'jurisdiction,'" United States v. Wheeler, 886 F.3d 415, 423 (4th Cir. 2018), "[o]nly if the statutory text 'plainly shows that Congress imbued a procedural bar with jurisdictional consequences' should a court treat a rule as jurisdictional." Stewart, 912 F.3d at 700 (quotation omitted). "Put otherwise, Congress must explicitly 'tag' a procedural bar 'as jurisdictional.'" Id. (quotation omitted). "In conducting this clear statement inquiry, the Supreme Court has looked to several factors, including the statutory text (if it speaks in 'jurisdictional terms'); the placement of the rule (if it is located in the jurisdiction-granting provision of the statute); and legislative context." Id. (quotation omitted).

Here, the first question the Court must answer is whether the 30-day filing time limit imposed by 5 U.S.C. § 7703(b)(2) is a jurisdictional prescription or a nonjurisdictional claims-

6

processing rule. It is undisputed that petitioner did not comply with the 30-day time limit; however, petitioner argues that the time limit should be equitably tolled, necessitating this inquiry. Section 7703(b)(2) provides:

> Cases of discrimination subject to the provisions of section 7702 of this title shall be filed under section 717(c) of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16(c)), section 15(c) of the Age Discrimination in Employment Act 1967 (20 U.S.C. 633a(c)), and section 16(b) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 216(b)), as applicable. Notwithstanding any other provision of law, any such case filed under any such section must be filed within 30 days after the date the individual filing the case received notice of the judicially reviewable action under such section 7702.

At the outset, for two reasons, application of the Supreme Court's clear-statement rule to § 7703(b)(2) is not as straightforward as it might seem, and each reason illustrates the limited value of most of the cases cited by the parties. First, as discussed above, the Supreme Court has only recently undertaken to clarify the distinction between jurisdictional prescriptions and nonjurisdictional claims-processing rules. Fort Bend, 139 S. Ct. 1848. Given that § 7703(b)(2) was enacted in 1978, in the intervening decades, many courts have answered this question in different ways and under various iterations of Supreme Court precedent. See, e.g., Oja v. Dep't of the Army, 405 F.3d 1349, 1357–58 (Fed. Cir. 2005) (discussing the circuit split that developed on this question in the early 1990s following the Supreme Court's decision in Irwin v. Dep't of Veterans Affairs, 498 U.S. 89 (1990)).

The Fourth Circuit avoided coming down on one side or the other of this circuit split, both before and after Irwin. For instance, in 1987, the Fourth Circuit held in an unpublished decision that § 7703(b)(2) was a jurisdictional prescription. See Hylton v. Dole, 818 F.2d 28, at *1 (4th Cir. 1987) (Table). Two years later, the Fourth Circuit held in a published decision that § 7703(b)(2) was a nonjurisdictional claims-processing rule. See Johnson v. Burnley, 887 F.2d 471, 475–77 (4th Cir. 1989). That decision was subsequently vacated pending rehearing en banc,

and the appeal was ultimately dismissed before rehearing en banc. Accordingly, it appears that the decision was vacated and never reinstated. See Young v. West, 149 F.3d 1172, at *5 (4th Cir. 1998) (Table) (describing the case as "vacated and appeal dismissed"). But see Archuleta v. Sullivan, 944 F.2d 900, at *2 (4th Cir. 1991) (Table) (describing the Fourth Circuit's action on the case as "recalling the grant of rehearing and leaving the panel's decision intact."). In any event, in 1993, the Fourth Circuit assumed without deciding that § 7703(b)(2) was a nonjurisdictional claims-processing rule. See Hinton v. Cheney, 9 F.3d 1543, at *3 (4th Cir. 1993) (Table).

Second, there is a related and similarly-worded filing time limit imposed by § 7703(b)(1)(A), and courts have more recently answered the same question with regard to this time limit. Section 7703(b)(1)(A) provides:

> Except as provided in subparagraph (B) and paragraph (2) of this subsection, a petition to review a final order or final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit. Notwithstanding any other provision of law, any petition for review shall be filed within 60 days after the Board issues notice of the final order or decision of the Board.

The Federal Circuit recently held on two occasions that § 7703(b)(1)(A) is a jurisdictional prescription. In Fedora v. Merit Sys. Protection Bd., the Federal Circuit reasoned that "[a]ppeal periods to Article III courts, such as the period in § 7703(b)(1), are controlled by the [Supreme] Court's decision in Bowles v. Russell, 551 U.S. 205 (2007)," in which the Court held that "the taking of an appeal within the prescribed time is 'mandatory and jurisdictional.'" 848 F.3d 1013, 1015 (Fed. Cir. 2017) (quotation omitted). Yet the Supreme Court subsequently explained that many courts of appeals had "tripped over" that statement in Bowles, which is "a characterization left over from days where [the Court] [was] less meticulous in [its] use of the term 'jurisdictional.'" Hamer, 138 S. Ct. at 21. Accordingly, in Fed. Educ. Ass'n v. Dep't of

Defense, 898 F.3d 1222, the Federal Circuit reasoned instead that "[t]he provision giving this court jurisdiction over decisions of the MSPB [28 U.S.C. § 1295(a)(9)]... constitutes a clear statement that [its] jurisdiction is dependent on the statutory time limit" because that provision "expressly link[s] to the statutory section imposing the time [limit] [§ 7703(b)(1)]." Yet in Fort Bend, the Supreme Court subsequently explained that "a requirement 'does not become jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions,'" or because it "cross-referenc[es] a jurisdictional provision." Fort Bend, 139 S. Ct. at 1851 n.8 (quotation omitted). Moreover, § 1295 does not expressly link to § 7703(b)(2).

At bottom, the older Fourth Circuit cases analyzing § 7703(b)(2) and the newer Federal Circuit cases analyzing § 7703(b)(1)(A), on which the parties largely rely, are of limited value. Also of limited value are the few district court cases that have recently analyzed § 7703(b)(2), as those cases have emphasized that binding precedent in their circuits, even if old, limited their review of the issue to whether intervening Supreme Court cases had implicitly overruled that precedent. See, e.g., Brookens v. Acosta, 297 F. Supp. 3d 40, 47 (D.D.C. 2018); Abell v. Dep't of Veterans Affairs, 2018 WL 4471779, at *2 n.2 (W.D. Ky. Sept. 18, 2018). As discussed above, the Fourth Circuit does not appear to have such binding precedent. Accordingly, the application of the Supreme Court's clear-statement rule regarding jurisdictional prescriptions to § 7703(b)(2) is in essence an issue of first impression.

In search of a clear statement of congressional intent, the first factor the Court must look to is the statutory text, and in particular whether that text "speaks in 'jurisdictional terms.'" Stewart, 912 F.3d at 700 (quotation omitted). If the text "addresses only the timeliness of claims" and "does not refer to the district courts' 'authority to hear untimely suits,'" the rule is more likely to be nonjurisdictional. Id. (quotation omitted). In contrast, if the text contains "language

9

dictating that judicial review be obtained within a prescribed time and manner before a particular court," the rule is more likely to be jurisdictional. Id. Importantly, "[i]n the context of statutes of limitations and other filing deadlines, using mandatory language is not enough to classify the provision as jurisdictional. Instead, the question is whether the filing deadline limits 'the power of the court rather than . . . the rights or obligations of the parties.'" Nauflett v. Comm'r of Internal Revenue, 892 F.3d 649, 652 (4th Cir. 2018) (quotation omitted).

Here, the text of the time limit imposed by § 7703(b)(2) states that "[n]otwithstanding any other provision of law, any [case filed under the statutes identified in the previous sentence] must be filed within 30 days after the individual filing the case received notice of the judicially reviewable action under such section 7702." Although cast in mandatory language, this text addresses only the timeliness of claims and does not refer to district courts' authority to hear untimely suits. Stewart, 912 F.3d at 700; compare Fort Bend, 139 S. Ct. at 1850–51 (analyzing 42 U.S.C. § 2000e-5(e)(1), which provides that a charge "shall be filed" with the Equal Employment Opportunity Commission within 180 days of the alleged unlawful employment practice, and stating that it "d[id] not speak to a court's authority . . . or 'refer in any way to the jurisdiction of the district courts'" (quotation omitted)) with Nauflett, 892 F.3d at 652–53 (analyzing I.R.C. § 6015(e)(1)(A), which provides that certain individuals "may petition the Tax Court (and the Tax Court shall have jurisdiction)" if the petition is filed within 90 days of the date that notice of the final determination of available relief is mailed to the individual, and stating that it "expressly conditioned the Tax Court's jurisdiction on the timely filing of a petition"); Wheeler, 886 F.3d at 425 (analyzing 28 U.S.C. § 2255(e), which provides that § 2241 petitions for a writ of habeas corpus "shall not be entertained" if a petitioner has failed to apply for or been denied relief by the sentencing court, and stating that it "unambiguously did strip the

10

district court of the power to act" (quotation omitted)). Accordingly, § 7703(b)(2) does not speak in jurisdictional terms.

The second factor the Court must consider is the placement of the rule, and in particular whether it "is locat[ed] in the jurisdiction-granting provision of the statute." Stewart, 912 F.3d at 700. If it is, the rule is more likely to be jurisdictional. Id. In contrast, if the rule is located in a provision "distinct from those provisions pertaining to jurisdiction," the rule is more likely to be nonjurisdictional. Id.

Here, § 7703 is titled "Judicial Review of Decisions of the Merit Systems Protection Board." Section 7703(b)(2) contains two sentences: the first identifies the three antidiscrimination statutes under which a case may be filed and the second sets out the time limit for filing a case. It is arguable whether this placement is located within the jurisdiction-granting provision of the statue, and a careful parsing of the statutory structure suggests that it is not. The starting point for a district court's jurisdiction over certain petitions for review of MSPB decisions is 28 U.S.C. § 1295(a)(9), which provides that "[t]he United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction . . . of an appeal from a final order or final decision of the Merit Systems Protection Board, pursuant to sections 7703(b)(1) and 7703(d) of title 5." Section 7703(b)(1) then provides that "[e]xcept as provided in subparagraph (B) and paragraph (2) of this subsection, a petition to review a final order or final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit." Paragraph (2)—§ 7703(b)(2)—in turn provides that "[c]ases of discriminations subject to the provisions of section 7702 of this title shall be filed under [the enforcement provision of one of three antidiscrimination statutes], as applicable."

The Supreme Court recently offered a helpful recitation of this statutory structure:

> [Section] 7703 governs judicial review of MSPB rulings. As already noted, § 7703(b)(1) provides that petitions to review the Board's final decisions should be filed in the Federal Circuit—'except as provided in paragraph (2) of this subsection.' Paragraph (2) then sets out a different rule for one category of cases—'cases of discrimination subject to the provisions of section 7702 of this title.' Such a case, paragraph (2) instructs, 'shall be filed under' the enforcement provision of an enumerated antidiscrimination statute. And each of those enforcement provisions authorizes an action in the federal district court. So 'cases of discrimination subject to the provisions of section 7702' shall be filed in district court.

Kloeckner v. Solis, 568 U.S. 41, 49–50 (2012) (quotation omitted). Significantly, this recitation confirms that the effect of § 7703(b)(2) is to create an exception to the exclusive jurisdiction of the Federal Circuit, and that it is the enforcement provisions of the enumerated antidiscrimination statutes that in turn "authorize[]" the action in district court under that exception. Id. Accordingly, although the Fourth Circuit has at times cited § 7703(b)(2) as the jurisdiction-granting provision for district court review of MSPB decisions, see, e.g. Rana v. United States, 812 F.2d 887, 888 (4th Cir. 1987), that citation does not tell the full story.[5]

Moreover, the Supreme Court has also explained that "a requirement 'does not become jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions,'" or because it "cross-referenc[es] a jurisdictional provision." Fort Bend, 139 S. Ct. at 1851 n.8 (quotation omitted). Rather, a deeper inquiry is required, and here, that inquiry

---

[5] Some courts have attempted to parse the Supreme Court's discussion of § 7703(b)(2) in Kloeckner for hints about how the Court would answer the question at issue here; however, Kloeckner is "ambiguous at best" on that front because it "does not speak directly to the issue at hand." Brookens, 297 F. Supp. 3d at 49. For instance, the Supreme Court's statement that the time limit "sets the clock running for when a case that belongs in district court must be filed there" but does not "further define which timely-brought cases belong in district court," may suggest that the time limit is jurisdictional. Kloeckner, 568 U.S. at 53. Yet the Supreme Court's statement that the time limit is "nothing more than a filing deadline" may suggest that it is nonjurisdictional. Id. at 52. "At the end of the day, trying to distill a clear lesson from Kloeckner about the jurisdictional nature of the time [limit] is difficult, at best." Brookens, 297 F. Supp. 3d at 49.

suggests that § 7703(b)(2) is a nonjurisdictional claims-processing rule. For instance, the title of § 7703 does not indicate that it is a jurisdictional provision. Compare Stewart, 912 F.3d at 701 (analyzing a provision titled "Employment by Federal Government") with Edmonson, 922 F.3d at 547 (analyzing a provision titled "Jurisdiction of Courts; limitations"). Additionally, "[n]othing 'conditions the jurisdictional grant'"—wherever it is located—"on the [time limit]" in § 7703(b)(2)." Stewart, 912 F.3d at 701 (quotation omitted). At bottom, particularly in light of the complicated statutory structure, the placement of the filing time limit imposed by § 7703(b)(2) does not evince a clear statement of congressional intent that the limit be a jurisdictional prescription.

The third factor the Court must look to is "legislative context." Id. at 700. Two points need to be considered. First, "[t]he legislative history of § 7703(b)(2) is no more helpful than the literal language of the statutory time limit in resolving the jurisdictional question" because "[o]nly scant references to the 30-day deadline appear in the legislative history and none sheds any light on congressional intent." Johnson, 887 F.2d at 476. Second, as discussed above, § 7703(b)(2) cross-references the enforcement provisions of three antidiscrimination statutes: 42 U.S.C. § 2000e-16(c) (the Civil Rights Act of 1964); 29 U.S.C. § 633a(c) (the Age Discrimination in Employment Act of 1967); and 29 U.S.C. § 216(b) (the Fair Labor Standards Act of 1938). "And each of those enforcement provisions authorizes an action in the federal district court." Kloeckner, 568 U.S. at 49–50. Accordingly, the Court may look to those statutes "for guidance in determining whether the deadline [in § 7703(b)(2)] should be treated as a jurisdictional requirement." Johnson, 887 F.2d at 477. Indeed, when the circuit split developed on this question in the early 1990s following the Supreme Court's decision in Irwin, "[m]ost of the circuit courts" held that § 7703(b)(2) was a nonjurisdictional claims-processing rule "because

it incorporates 42 U.S.C. § 2000e-16(c)," which courts had held was a nonjurisdictional claims-processing rule. Oja, 405 F.3d at 1357 (collecting cases); see also Johnson, 887 F.2d at 477 ("We believe that by incorporating those antidiscrimination statutes into Section 7703(b)(2), Congress intended for 7703(b)(2)'s time limit to be treated as flexibly as the deadlines in the incorporated statutes.").

Whatever the merits or shortcomings of the argument that § 7703(b)(2) incorporates, and therefore mirrors the jurisdictional nature of, the enforcement provisions of the enumerated antidiscrimination statutes, the cross-references to them are certainly a relevant consideration. In that vein, the Fourth Circuit recently held that 42 U.S.C. § 2000e-16(c) is a nonjurisdictional claims-processing rule. See Stewart, 912 F.3d at 701–02. Similarly, other courts have recently held that various aspects of 29 U.S.C. § 216(b) are also nonjurisdictional claims-processing rules. See, e.g., Tijerino v. Stetson Desert Project, LLC, 934 F.3d 968, 975 (9th Cir. 2019); Montes v. Janitorial Partners, Inc., 859 F.3d 1079, 1084 (D.C. Cir. 2017). The relevance of this point is more clearly illustrated by the following: if § 7703(b)(2) were a jurisdictional prescription, a plaintiff who brought an untimely action under 42 U.S.C. § 2000e-16(c) directly to a federal district court within the Fourth Circuit might be able to invoke equitable tolling, whereas a plaintiff who brought the same untimely action to the same court via a petition for review of an MSPB decision would not be able to invoke equitable tolling. "[I]t makes no sense to provide the possibility of equitable tolling . . . to one plaintiff but not the other merely because of the different procedural routes taken by the cases prior to their arrival in federal district court." Johnson, 887 F.2d at 477. There simply is "no clear sign that Congress intended to create such an anomaly." Id.

In sum, in cases like this one that do not involve the transfer of adjudicatory authority from one Article III court to another, "most [statutory] time bars are nonjurisdictional," and the filing time limit imposed by 5 U.S.C. § 7703(b)(2) is no exception. Hamer, 138 S. Ct. at 20 (quotation omitted). In such cases, a statutory time bar is jurisdictional only if "the Legislature clearly states that [the rule] shall count as jurisdictional." Id. Congress did not do so here. There is no clear statement, whether in the statutory text, the placement of the rule, or the legislative context, that Congress intended the time limit imposed by § 7703(b)(2) to be a jurisdictional prescription. Accordingly, the Court concludes that the limit imposed by § 7703(b)(2) is a nonjurisdictional claims-processing rule.

Although it is clear that jurisdictional prescriptions preclude equitable tolling, whether the inverse is true—whether nonjurisdictional claims-processing rules permit equitable tolling—is less clear. "The mere fact that a time limit lacks jurisdictional force . . . does not render it malleable in every respect." Nutraceutical Corp. v. Lambert, 139 S. Ct. 710, 714 (2019). For instance, "some claims-processing rules are 'mandatory'—that is, they are 'unalterable if properly raised by an opposing party.'" Id. (quotation omitted). "Rules in this mandatory camp" are arguably not susceptible to equitable tolling even though they are nonjurisdictional. Id. Indeed, in both Fort Bend and Hamer, the Supreme Court explicitly reserved the issue of whether "mandatory claims-processing rules may [ever] be subject to equitable exceptions." 139 S. Ct. at 1849 n.5; 138 S. Ct. at 18 n.3 (alteration in original).

"Whether a rule precludes equitable tolling turns not on its jurisdictional character but rather on whether the text of the rule leaves room for such flexibility." Nutraceutical, 139 S. Ct. at 714. "Where the pertinent rule or rules invoked show a clear intent to preclude tolling, courts are without authority to make exceptions merely because a litigant appears to have been diligent,

reasonably mistaken, or otherwise deserving." Id. Yet "the simple fact that a deadline is phrased in an unqualified manner does not necessarily establish that equitable tolling is unavailable." Id. at 715.

Here, as there was no clear statement of congressional intent regarding the jurisdictional nature of the time limit imposed by § 7703(b)(2), there is also no clear statement of congressional intent regarding the availability of equitable tolling of the time limit. Instead, there is only the simple but insufficient fact that the time limit is phrased in mandatory terms. This conclusion is bolstered by the circuit split that developed on this question following the Supreme Court's decision in Irwin. Most of the circuit courts that held that § 7703(b)(2) was nonjurisdictional also held that it was subject to equitable tolling. See Oja, 405 F.3d at 1357.

Turning to whether equitable tolling is warranted under the circumstances of this case, "[a]lthough non-jurisdictional" and subject to equitable tolling, "the 30-day time limit [imposed by § 7703(b)(2)] must not be taken lightly, and failure to meet the deadline will necessitate dismissal under most circumstances." Johnson, 887 F.2d at 479. "Plaintiffs are entitled to equitable tolling only if they show that they have pursued their rights diligently and extraordinary circumstances prevented them from filing on time." Raplee v. United States, 842 F.3d 328, 333 (4th Cir. 2016). Accordingly, "equitable tolling is reserved for 'those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" Id. (quotation omitted). "The use of equitable tolling 'must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes.'" Lawrence v. Lynch, 826 F.3d 198, 204 (4th Cir. 2016) (quotation omitted).

Here, Jordan has not alleged facts that amount to extraordinary circumstances beyond her control that caused her to file her petition for review 33 days after the date it was due. For example, petitioner asserts that she was generally impeded by living and working in Germany, where she works 14-hour days, has limited internet access, has a significant time difference with the United States, and does not have a familial support system. Yet the Fourth Circuit recently affirmed a denial of equitable tolling where the plaintiff was in "an isolated, rural area" in Jamaica with "limited . . . access to international communication." Id. at 201–02.

Additionally, and more strenuously, petitioner asserts that she was specifically impeded by her prior counsel, Pittard, who was the one responsible for filing the petition for review in a timely manner. Petitioner emphasizes that there was an inexplicable communication failure between her and prior counsel whereby he stopped responding to her requests for status updates and copies of court filings, and ultimately missed the statutory filing deadline; however, generally, "an attorney's mistake in interpreting a statute does not amount to an extraordinary circumstance" warranting equitable tolling. Ott v. Md. Dep't of Public Safety and Correctional Servs., 909 F.3d 655, 661 (4th Cir. 2018). Although "equitable tolling may be available when a plaintiff's attorney engages in 'serious misconduct' such as 'making misrepresentations to the plaintiff, disregarding the plaintiff's instructions, refusing to return documents, or abandoning the plaintiff's case,'" Edmonson, 922 F.3d at 549 (quotation omitted), "equitable tolling will [not] be granted . . . in 'a garden variety claim of excusable [attorney] neglect.'" Kuusk v. Holder, 732 F.3d 302, 306 (4th Cir. 2013) (quotation omitted).

At bottom, although Jordan presents a sympathetic case, it is simply one of excusable neglect. Whatever communication issues occurred between Jordan and Pittard, Pittard plainly misinterpreted the statute. Pittard attempted to file Jordan's petition for review in accordance

with § 7703(b)(1)(A) by filing it in the United States Court of Appeals for the Federal Circuit within 60 days after the AJ's decision became final. As thoroughly discussed above, Pittard instead should have filed Jordan's petition for review in accordance with § 7703(b)(2) by filing it in a federal district court within 30 days after the AJ's decision became final. Accordingly, Jordan has not alleged facts that meet the high burden to warrant equitable tolling of the time limit imposed by § 7703(b)(2). See, e.g. Gayle v. United Parcel Serv., Inc., 401 F.3d 222, 226–27 (4th Cir. 2005) ("[The plaintiff's] argument boils down to a request that we relieve her of her counsel's negligent failure to observe required procedure. . . . We think that attorney negligence—including allowing a client's case to fall through the cracks—is [not] an extraordinary circumstance. . . . We therefore hold that attorney negligence does not justify equitable tolling.").

## III. CONCLUSION

For the reasons stated above, the Court concludes that Jordan has filed this civil action 33 days after the 30-day filing deadline imposed by 5 U.S.C. § 7703(b)(2), and has not alleged facts sufficient to support equitable tolling. Therefore, respondent's Motion to Dismiss will be GRANTED by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 28 day of October, 2019.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge